UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

UNITED STATES OF AMERICA                        PLAINTIFF

v.                      CRIMINAL ACTION NO. 5:20-CR-47-DCR

THEO GERSTLE                                        DEFENDANT

**SENTENCING MEMORANDUM**
*ELECTRONICALLY FILED*

Comes the Defendant, Dr. Theo Gerstle, by and through counsel, Brian Butler, and hereby submits this Sentencing Memorandum setting forth the factors this Court should consider in determining what sentence is sufficient, but not greater than necessary, to comply with the statutory directives set out in 18 U.S.C. § 3553(a).

Dr. Theo Gerstle ("Dr. Gerstle") pled guilty to obstruction of justice pursuant to 18 U.S.C. § 1519. The Presentence Investigation Report ("PSI") calculates Dr. Gerstle's guideline range at 18 – 24 months.[1] Based upon the application of the factors in 18 U.S.C. § 3553(a), the undersigned respectfully requests the Court sentence Dr. Gerstle to five (5) years of probation with any special conditions the Court deems appropriate.

**APPLICATION OF 18 U.S.C. § 3553(a)**

Pursuant to 18 U.S.C. § 3553(a), the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the delineated sentencing considerations.

---

[1] Dr. Gerstle has one remaining unresolved objection to the PSI which affects Dr. Gerstle's guideline range. If the Court grants Dr. Gerstle's objection, the total offense level would be reduced to 13 with a corresponding guideline range of 12 – 18 months in Zone C.

A.   Nature and Circumstances of the Offense

For many years, Dr. Gerstle was lawfully prescribed Ritalin. As is common with Schedule II medications, Dr. Gerstle developed a dependence on Ritalin. In June 2016, Dr. Gerstle's wife unexpectedly initiated an acrimonious divorce and attempted to move to New York with their three children. Dr. Gerstle, thereafter, developed a significant drinking problem.

Dr. Gerstle's wife made an issue of his Ritalin use in an effort to gain leverage in their child custody discussions, knowing he relied on the medication to function daily. During this same timeframe, Dr. Gerstle's father became ill and ultimately died in 2017. Dr. Gerstle attempted to stop using Ritalin, without medical assistance or a plan for gradual reduction, while enduring the loss of his father and the destruction of his immediate family, all while maintaining a busy practice.

Subsequently and to obtain Ritalin, Dr. Gerstle prescribed Ritalin to Tony McHone and Amber Adams for his own personal use. Dr. Gerstle met Mr. McHone as a patient but they developed a friendship over time. Dr. Gerstle worked with Ms. Adams. They were also friends. Mr. McHone and Ms. Adams filled the prescriptions and gave the pills to Dr. Gerstle, who took them as had previously been prescribed to him by his primary care physician. Dr. Gerstle could have easily obtained Ritalin from his doctor. Unfortunately, he chose to obtain the pills surreptitiously rather than risk any negative inferences in the ongoing custody disputes with his now ex-wife.

Dr. Gerstle justified his actions by concluding that he needed the pills that had been previously prescribed to him and they would have been prescribed to him had he simply continued to see his doctor. He did not contemplate that he was putting Mr. McHone and

2

Ms. Adams in legal jeopardy. For Dr. Gerstle, the worst part of this terrible situation is living with the fact that Mr. McHone and Ms. Adams were also prosecuted for their role in assisting him.

On January 15, 2018, Dr. Gerstle came to his office and was suspected of being under the influence of alcohol. Subsequently, Dr. Gerstle was arrested. Three days later, DEA came to Dr. Gerstle's office to obtain Mr. McHone's and Ms. Adams' patient records. Dr. Gerstle had been told to vacate the hospital property and was in the process of packing and shutting down his practice. His medical license was suspended pending investigation and he temporarily lost custody of his children. Dr. Gerstle was suffering from the effects of active addiction and alcohol and Ritalin withdrawal. When DEA requested Ms. Adams' and Mr. McHone's patient files, Dr. Gerstle panicked. He told agents that they were not available. The agents sat in his office waiting room after stating that if the records were not turned over, they would return with a warrant. Over the course of the next 30 minutes, Dr. Gerstle and Ms. Adams created medical entries in an attempt to justify the prescriptions to her and Mr. McHone. The following morning, Dr. Gerstle called the Kentucky Physician Health Foundation and self-reported his addiction. Dr. Gerstle volunteered for residential drug and alcohol treatment.

This was the only obstructive act Dr. Gerstle committed during the investigation or prosecution of this matter. In fact, Ms. Adams continued to work with Dr. Gerstle for many months after January 18, 2018, (date of DEA's office visit) despite advising him that she had truthfully told investigators about their actions. Dr. Gerstle wanted to continue to provide Ms. Adams employment and certainly did not penalize her for cooperating with law enforcement's investigation. Dr. Gerstle's action was clearly wrong and he has accepted responsibility but his

actions did not inhibit the investigation in any significant way. Moreover, Dr. Gerstle's obstructive misconduct was not premeditated. It was the foolish decision of a highly successful person who hit rock bottom in the throes of addiction and active withdrawal. It was not done to cover up a violent offense or an offense committed for pecuniary gain. It was an addict, albeit an otherwise very well educated addict, committing a panicked offense to cover up the extent of his addictive behavior.

Importantly, Dr. Gerstle voluntarily sought and completed inpatient treatment shortly after this event. He has remained clean and sober.

  B. Personal History and Characteristics

    1. Educational and Work History.

Dr. Gerstle's circumstances are a tragic reminder that substance abuse affects everyone regardless of race, creed, education, or socioeconomic status. However, Dr. Gerstle is also a reminder that with hard work and dedication, one can move forward and overcome the grip of addiction.

Dr. Gerstle's entire life has consisted of high achievement. As a young man, he earned the rank of Eagle Scout. His academic and extracurricular successes led him to the United States Military Academy. Dr. Gerstle graduated from the United States Military Academy in 1999.

He served as an armor officer in the United States Army from 1999-2003 and was honorably discharged. While serving his Country, Dr. Gerstle earned the following medals: Army Commendation Medal (x2); Army Achievement Medal (x2); Presidential Unit Citation (x2), Airborne Qualification, and Air Assault Qualification.

Following his military service, Dr. Gerstle attended medical school at the University of Louisville where he served as class president all four years. Dr. Gerstle also received a leadership award and was inducted into the Alpha Omega Alpha Honor Society. Upon completion of medical school, Dr. Gerstle was accepted into Harvard's Plastic Surgery Residency program and entered the program in 2008. While at Harvard, Dr. Gerstle tirelessly treated many victims of the Boston Marathon bombing. Dr. Gerstle completed Harvard's residency program in 2014 and specialized in reconstructive surgery.

Dr. Gerstle came back to Kentucky and began practicing medicine. He currently works as at Lexington Plastic and Reconstructive Surgery. Dr. Gerstle has never had a malpractice claim filed against him.

2. Family History

Dr. Gerstle is a committed father. He has joint custody of his three children, ages 14, 9, and 6. Dr. Gerstle has his children the majority of the time. He takes them to necessary appointments, extracurricular activities, and attends any meeting regarding their health or school. He serves as "classroom" dad for their classes, where he assists with flash cards or activities and chaperoning field trips.

Dr. Gerstle's ex-wife must leave her residence for work at 6:15 a.m. and she does not return until late in the evening. Her job has less flexibility and, therefore, much of the childcare falls on Dr. Gerstle. During these uncertain times surrounding COVID-19, Dr. Gerstle's three children are attending 1st, 4th, and 9th grade virtually, at his office each day, so that he can oversee their education and help when needed.

Dr. Gerstle's children are firmly and happily established in Lexington. If incarcerated

5

for any substantial period, it is likely that he will lose custody and the children will be uprooted by their mother, who has made it repeatedly clear that she dislikes Kentucky, and moved to New York where she has made it repeatedly clear she would rather return.  The children have expressed a clear desire to stay in Kentucky.  Above all, Dr. Gerstle has always cherished his time with his children as delineated in his character letters.  Dr. Gerstle desperately wants to continue living with his children and for his children to continue to live in their hometown of Lexington surrounded by both parents.  *See also attached letter from Attorney Martha Rosenberg.*

Dr. Gerstle is in a healthy and committed relationship with Brandi Lewis.  Dr. Gerstle and Ms. Lewis have been in a relationship for approximately three years.  They live together and have blended their families.  Their children are emotionally attached to each other.  Dr. Gerstle's continued income is essential to his family.

Ms. Lewis has witnessed firsthand Dr. Gerstle's transformation.  She watched him course-correct without the Court's intervention and stayed romantically involved with him through his rehabilitation.  She writes, "Since treatment, he has worked diligently every day to maintain his sobriety and rebuild his family and practice."  *See attached Brandi Lewis letter.*

      3.     Charitable Works.

Dr. Gerstle is also active in the community and has used his God given skills to the betterment of others.  He volunteers his services to do tattoo and branding removals for victims of human trafficking.  He has completed many free surgeries for human trafficking victims. Dr. Gerstle has also received referrals from Wounded Warriors for surgery related to migraine relief.  He is a member of the Knights of Columbus and volunteers at this parish.  Dr. Gerstle

has repeatedly used his surgical skills to assist those on the margins of society. Simply put, Dr. Gerstle is a good person.

        4.        <u>Lack of Criminal History</u>

Dr. Gerstle does not have any prior criminal history.[2]

        5.        <u>Treatment History</u>

Following the events of January 2018, Dr. Gerstle sought help from Dale Sights. Mr. Sights has been in recovery for many years and has gone on to lead an extremely successful life. He recently retired from his position as President of Field & Main Bank. Mr. Sights encouraged Dr. Gerstle to attend inpatient treatment. Mr. Sights arranged for Dr. Gerstle to attend Caron Treatment Center in Pennsylvania.

Dr. Gerstle went into inpatient recovery on February 1, 2018, at Caron Treatment Center. He successfully completed inpatient treatment on April 1, 2018. Upon completing inpatient treatment, Dr. Gerstle signed an aftercare contract with the Kentucky Physician's Health Foundation ("Foundation").

The Foundation requires:

    *Documented attendance at no less than three AA meetings per week;

    *Ongoing relationship with an AA sponsor;

    *Weekly participation in a physician's aftercare group;

    *Random, observed drug screens and alcohol determinations;

    *Interval reports regarding his professional behavior.

Dr. Gerstle has been fully compliant with the Foundation since entering into his contract

---

[2] His arrest for alcohol intoxication was expunged after he immediately accepted responsibility for his actions, went

on April 11, 2018. *See attached Dr. Greg Jones Letter.*

Moreover, Dr. Gerstle has not only embraced his recovery but has assisted others. He has been an instrumental factor in getting six doctors into substance abuse treatment. He has sponsored two doctors. His former mentor, Dr. Morton Kasdan, recently asked Dr. Gerstle to speak at the University of Louisville Medical School orientation about the dangers of substance abuse and how to seek help. Dr. Gerstle's program was entitled "Substance Abuse and Getting Help Before It's Too Late." Dr. Gerstle is doing all he can to help other physicians with addiction issues as well as enlightening young medical students about the dangers of not seeking assistance to combat substance abuse problems.

Mr. Sights writes, "Theo Gerstle is one of the few who has not only the capacity, but additionally the willingness and desire to actively participate in such work [addiction recovery]. We indeed need his volunteer service in that critical area of our work." *See attached Dale Sights letter.*

Because of his progress and commitment to treatment, the Kentucky Board of Medical Licensure has permitted Dr. Gerstle to practice medicine since the summer of 2018. His ability to prescribe controlled substances has not been restricted. There have been absolutely no instances of further misconduct since January 18, 2018. Dr. Gerstle is a fantastic surgeon who is using his skills to the community's advantage.

    4.    Character References

The attached character letters demonstrate Dr. Gerstle's charity, commitment to his Church, commitment to his children, and dedication to maintaining his sobriety. Dr. Gerstle's

---

to treatment and completed more than the required amount of community service.

letters also speak to his talent, service to the United States, and value to the community.

Dr. Morton Kasden, retired clinical professor of plastic surgery at the University of Louisville, describes Dr. Gerstle as a "superstar medical student" and "demonstrated the best skills with his hand I have ever seen."   Dr. Gerstle was class president all four years at the University of Louisville and also earned an academic excellence award.   Importantly, Dr. Gerstle is sharing his substance abuse experiences with freshman medical students at the University of Louisville.

Dr. Frank Burke's letter discusses the plastic surgery work that Dr. Gerstle does for his Wound Center patients.   But, Dr. Burke also knows him as a dedicated parent, committed Christian, and active member of the Knights of Columbus.

Dr. Clinton Leinweber writes, "I first became aware of Theo's good character when he recognized a medical problem and entered a rehabilitation program.   He not only worked tirelessly on his own recovery but was always eager to help and counsel others.'   Dr. Leinweber further writes, "He [Dr. Gerstle] is one of the few physicians to offer free care to patients."

Dr. Brandon Conrad met Dr. Gerstle at an AA meeting.   Dr. Gerstle was instrumental in finding a place for Dr. Conrad to begin his recovery.   Dr. Gerstle has helped six physicians, like Dr. Conrad, get help and navigate the difficult path to recovery in order to regain their professional and personal lives.

David Ehl met Dr. Gerstle at Alcoholics Anonymous.   Mr. Ehl has helped people for 32 years including sponsoring over 100 men.   Mr. Ehl writes, "Of those men [100 + men he has sponsored], none have followed directions as thoroughly as Theo Gerstle."

Lieutenant Colonel Cayton Johnson was a cadet with Dr. Gerstle at the United States

Military Academy.  Colonel Johnson writes, "Theo is a man of character; defined by those same values he lived while in uniform.  His loyalty to family and selfless service to his country make me proud to call him my friend."

Chelsea Satterly worked in Dr. Gerstle's home and had an opportunity to observe him with his children.  Ms. Satterly writes, "I came to admire Dr. Gerstle's pure devotion to his children."  Her letter speaks strongly not only to Dr. Gerstle's devotion to his children but their reliance upon him.

Father Dennis Knight describes Dr. Gerstle as a "devoted Christian" who "practices his faith on a daily basis in his relationships with his children, his friends and his medical practice." Father Knight further states, "His children and his patients need his continued care for them and his community needs him to use the many gifts he has for their benefit."

Letitia Maynard, a friend and patient, writes, "It has become apparent to me that he [Dr. Gerstle] is the foundation and consistency that has held the children together since his divorce. He is the person these kids can count on always being there for them and is truly what a single dad should be in every way."  Ms. Maynard further writes, "Theo is on the road to making himself a better person and the world a better place for all of those he touches."

David Feinberg, Dr. Gerstle's psychologist, has worked with Dr. Gerstle through a very acrimonious divorce, his treatment, and his rehabilitation.  He writes, "There is no doubt that Dr. Gerstle has accepted responsibility for his mistakes and has paid a huge price for his addiction." He further writes, "I know that he is remorseful for the pain and suffering that this has caused others."  Importantly, Dr. Feinberg states, "He [Dr. Gerstle] continues to encourage doctors who struggle with addiction to seek help.  He [Dr. Gerstle] offers free reconstructive surgery to

human trafficking victims and is one of only two doctors in Lexington who help file Casey's Law Orders."

Dr. Gerstle's character is outstanding.   Few have the courage and commitment to attend and complete the United States Military Academy in order to serve our Country.   Few have the discipline to excel in medical school and to obtain and complete a residency at Harvard. Possibly Dr. Gerstle's most daunting challenge was to overcome public humiliation and the derailment of an amazingly successful life.   Dr. Gerstle has achieved sobriety and earned the respect of his profession, his community and his family.   Unquestionably, Dr. Gerstle will succeed.

C. Need for the Sentence Imposed

A five year sentence with any special conditions the Court deems appropriate is sufficient but not greater than necessary to accomplish the sentencing goals.   Our suggested sentence reflects the seriousness of the offense.   While Dr. Gerstle committed a felonious act, his act was done under the haze of addiction and active withdrawal from Ritalin and alcohol.   Importantly, his obstructive conduct did not significantly interfere with the DEA investigation.   Dr. Gerstle's panicked and made a stupid decision that fooled no one.

Based upon his poor decision, he is a convicted felon with all the concurrent consequences.   It remains to be determined by the Kentucky Board of Medical Licensure whether he will be able to continue to practice medicine now or in the future.   Literally, Dr. Gerstle's actions may have destroyed what would have likely been an incredible medical career to the benefit of the community and his family.   *See attached letter from Attorney Chad Elder.*

11

Per his plea, Dr. Gerstle is prohibited from prescribing controlled substances for five (5) years. This is a significant punishment. This prohibition will make it very difficult to practice medicine even if the Kentucky Medical Licensure Board permits Dr. Gerstle to maintain his medical license. Under these circumstances, Dr. Gerstle would only be able to practice with other doctors who are willing to collaborate with him anytime a patient may need a controlled substance prescription. Needless to say, these types of opportunities are limited and will greatly decrease his market value. Surrendering his DEA license for five (5) years as a term of his plea is a major punishment in and of itself.

The ramifications of a felony conviction, surrender of his DEA license for five (5) years, and potentially forfeiting his medical career are very significant and reflect the seriousness of the offense, promote respect for the law and provide just punishment, thereby permitting the Court to a craft a sentence without incarceration which is sufficient but not greater than necessary.

The above ramifications also satisfy the deterrence criteria. Dr. Gerstle is specifically deterred. He reformed his life and his career long before he was charged with an offense or even knew criminal charges would likely be forthcoming. An incarcerated sentence is superfluous to achieve specific deterrence.

General deterrence is also satisfied by our requested sentence. Dr. Gerstle is a West Point graduate and a Harvard trained doctor. His addiction resulted in public humiliation. He had to fight to resurrect his medical career with the assistance of the Foundation and to regain custody of his children. After all the hard work, his past misconduct destroyed his career for a second time. He is a convicted felon. He is losing his DEA license for 5 years. And, he is pleading with the Court not to incarcerate him based upon his personal family situation. Any

doctor who is aware of all that has happened to Dr. Gerstle would certainly be deterred from engaging in similar conduct.  Importantly, Dr. Gerstle is actively trying to deter others by telling his story to medical students and physicians in the hope that they will seek help rather than to continue to spiral down.

Dr. Gerstle's rehabilitation has been ongoing and marked by success.  He has been and will continue to be closely monitored by the Foundation.  An incarcerated sentence is not necessary to protect the public from further crimes.  Dr. Gerstle will never commit another offense regardless of the Court's sentence.

The final statutory consideration for the Court to evaluate under "the need for the sentence imposed" factor is how Dr. Gerstle can best receive any necessary training or treatment. Without question, he benefits by continuing without interruption in his current treatment plan.  It is working.

      D.      <u>The Kinds of Sentences Available</u>

Dr. Gerstle is statutorily eligible for probation.  The guidelines are advisory to the Court.

      E.      <u>Avoiding Unwarranted Sentencing Disparities</u>

Dr. Gerstle recognizes and appreciates that Ms. Adams and Mr. McHone would not have been prosecuted had they not agreed to assist him.  Dr. Gerstle will have to live with this reality for the rest of his life.

Dr. Gerstle also recognizes that Ms. Adams and Mr. McHone were likely given consideration for cooperating with the Government's investigation as they should have. Dr. Gerstle continued to employ Ms. Adams for many months with full knowledge that she cooperated with the Government because he recognized that he was wrong, that Ms. Adams

13

needed to do everything possible to extricate herself from this situation and that she still needed a job.

Additionally, immediately after completing drug and alcohol treatment, Dr. Gerstle asked the undersigned to contact the United States Attorney's Office to seek resolution of this matter. Once it was clear that this matter would be criminally prosecuted, Dr. Gerstle agreed to resolve the case by way of an Information. He pled guilty the first day he appeared in Court.

Statistics compiled by the United States Sentencing Commission shed light on the need to "avoid sentence disparities" among similar defendants who committed similar offenses. *See* 18 U.S.C. § 3553(a)(6). Attached are relevant charts and statistics regarding similar prosecutions and sentences in both the Sixth Circuit and nationally between 2015 and 2019. The statistics demonstrate that the Court would be following a national and 6th Circuit trend by imposing a non-prison sentence. Nationally, from 2015-2019, 44% of those being sentenced for administration of justice offenses who were similarly situated and falling into Zone C of the Guidelines received a probated sentence. In the same time frame, one case fell into Zone D and that individual received probation and an alternate sentence.

With those considerations in mind, we believe that a sentence of five (5) years of probation with any special conditions the Court deems appropriate avoids an unwarranted sentencing disparity. Five (5) years of probation coupled with surrendering his DEA license for five (5) years and continued monitoring by the Foundation for five (5) years significantly differentiates Dr. Gerstle from Ms. Adams' and Mr. McHone's sentences of three (3) years of probation while also avoiding an unnecessary sentencing disparity.

F.   Conclusion

Dr. Gerstle panicked when investigators asked for records.   He foolishly and inefficiently attempted to cover up the fact that he was writing Ritalin prescriptions to Amber Adams and Tony McHone for his own personal use.

Since January 2018, Dr. Gerstle has tackled his addiction and done everything possible to move forward positively.   He completed inpatient treatment, entered into an intensive contract with the Foundation, and resurrected his medical career and his reputation.   He has used his talents for the betterment of his community.

Prison is not necessary to accomplish the goals of sentencing under Dr. Gerstle's particular circumstances.   Dr. Gerstle, his family, and, most importantly, the community are better served if the Court permits him to remain in the community and continue to be a productive member of society.

WHEREFORE, Theo Gerstle respectfully requests that the Court sentence him to five years of probation with any special conditions the Court deems appropriate.

Respectfully submitted,

*/s/ Brian Butler*
Brian Butler
Stites & Harbison PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
(502) 594-1802

## **CERTIFICATE OF SERVICE**

It is hereby certified that a copy of the foregoing Sentencing Memorandum was electronically filed on September 15, 2020, with service to counsel of record.

*/s/ Brian Butler*
Brian Butler
Attorney at Law